c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JARRELL E. GODFREY, JR., *ET AL.*,<br>Plaintiffs | CIVIL ACTION NO. 3:18-CV-00887 |
| VERSUS | JUDGE DOUGHTY |
| FIRST AMERICAN TITLE INSURANCE CO.,<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (Doc. 14) filed by Plaintiffs, Jarrell E. Godfrey, Jr. ("Godfrey") and Margaret Anne Hines ("Hines") (collectively referred to as "Plaintiffs").[1] Plaintiffs claim the Court lacks diversity jurisdiction over this action. (Doc. 14). Defendant First American Title Insurance Company ("First American") opposes the motion. (Doc. 23). Because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, it is recommended that Plaintiffs' Motion to Remand (Doc. 14) be DENIED.

I. Background

Plaintiffs filed a Petition[2] in the Sixth Judicial District Court, Tensas Parish,

---

[1] Attorney John S. Godfrey filed this Motion to Remand alleging it is filed on behalf of both Plaintiffs. (Doc. 14). However, Attorney S. Godfrey indicates, and the record shows, he only represents Hines. (Doc. 14).

[2] Plaintiffs' Petition was titled "Petition Seeking the Issuance of a Mandatory Injunction Requiring the Issueance[sic] of a Title Insurace[sic] Policy Pursuant to a Commitment to Issue a Title Insurance Policy, Recovery of Amounts Due Under Title Insurance Policies

against First American. (Doc. 1-1). Plaintiffs' Petition was jointly filed by Godfrey, pro se, and through counsel for Hines. (Doc. 1-1). Plaintiffs allege Godfrey and Hines are married but separate in property. (Doc. 1-1). Plaintiffs claim they purchased as undivided owners lots 61, 62, and 63 ("Lots 61-63") of the Osceola Subdivision, Second Addition, Tensas Parish, Louisiana from Michael and Jennifer Jenkins (the "Jenkinses"). (Doc. 1-1). Plaintiffs assert First American issued them a title insurance policy ("the Policy") through its agent, Marathon Title Company, LLC ("Marathon"). (Doc. 1-1). Plaintiffs further assert the Policy guaranteed Plaintiffs' title to Lots 61-63 was good, valid, and merchantable. (Doc. 1-1). Plaintiffs claim Section 7[3] of the Policy is an unenforceable adhesion provision, included in the terms of the contract they did not sign. (Doc. 1-1). Plaintiffs seek a declaratory judgment striking Section 7 from the policy.

Plaintiffs claim they acquired Lot 60 from the Jenkinses on July 21, 2007. (Doc. 1-1). Plaintiffs allege Marathon issued a First American title insurance commitment ("the Commitment") guaranteeing the Lot 60 title was good, valid, and merchantable. (Doc. 1-1). Plaintiffs claim neither Marathon nor First American have issued a policy for Lot 60 to date. (Doc. 1-1). Plaintiffs seek a mandatory injunction requiring First American to issue to Plaintiffs a title insurance policy covering Lot

---

Including Damages, Penalties, and Attorney Fees for Failure to Timely Pay Claims and Breach of Fiduciary Duties Owed by an Insurer, and Seeking a Declaratory Judgment Regarding Provisions Included Within the Title Insurance Policies." (Doc. 1-1).

[3] Plaintiffs claim Section 7 transfers rights under the policy to First American upon payment of amounts due. (Doc. 1-1).

60. (Doc. 1-1). Alternatively, Plaintiffs seek the value of their loss with respect to Lot 60, plus damages, penalties, and attorney's fees under La. R.S. 22:1973 C. (Doc. 1-1).

Plaintiffs allege First American became aware of defects in the title to Lots 60-63 on about March 11, 2018 when its in-house counsel was advised of the defects by Marathon representatives. (Doc. 1-1).

Plaintiffs further claim Gloria Hill Harper ("Harper") acquired full ownership of Lots 57-66 from Osceola Development Company, LLC on August 17, 2004. (Doc. 1-1). Plaintiffs allege Harper transferred fifty percent of Lots 57-66 to the Kenneth J. Smith and Elizabeth Adams Smith (the "Smiths") on August 27, 2004. (Doc. 1-1). Plaintiffs claim the Jenkinses acquired Lots 57-66 from the Smiths and Harper on December 19, 2004. (Doc. 1-1). However, Plaintiffs allege Harper was married to A. Delbert "Buddy" Harper, III ("Mr. Harper"), and that there was no claim that her interest sold was her separate property. (Doc. 1-1).

Plaintiffs claim that in all acts of acquisition or ownership, Harper stated her status to be a "married woman." (Doc. 1-1). Plaintiffs allege Mr. Harper did not consent to, and was not aware of, Harper's sales of Lots 57-66. (Doc. 1-1). The Harper marriage ended in divorce on March 30, 2007, with a settlement of community property. (Doc. 1-1). Mr. Harper died in July of 2008. (Doc. 1-1). Mr. Harper was survived by Harper and two children of the marriage, Jennifer Harper Hudak ("Mrs. Hudak") and Stanley Delbert Harper ("Stanley Harper"). (Doc. 1-1). Plaintiffs allege no succession has been opened for Mr. Harper's estate. (Doc. 1-1). Plaintiffs allege

3

Mrs. Hudak and Stanley Harper were not aware of the sales prior to March of 2018. (Doc. 1-1).

Plaintiffs claim they were advised by First American's in-house counsel on March 13, 2018 that they need not take any action, as any claims to set aside the transfers of Harper's community interest in Lots 57-66 had prescribed. (Doc. 1-1). Plaintiffs further allege they were told any claim filed with First American would be denied as there was no defect in the title. (Doc. 1-1).

Plaintiffs claim they filed a formal notice of claim with First American, with sufficient proof of loss, dated March 16, 2018. (Doc. 1-1). Plaintiffs allege First American acknowledged that it received the claim on March 20, 2018, via letter dated April 2, 2018. (Doc. 1-1). Plaintiffs claim they filed an additional proof of claim on April 11, 2018 and amended on April 19, 2018. (Doc. 1-1). Plaintiffs allege First American acknowledged the two additional proofs of claim via email on April 19, 2018. (Doc. 1-1). Plaintiffs claim First American has yet to send them a claims determination letter. (Doc. 1-1).

Plaintiffs allege First American breached its fiduciary duty as an insurer to its policyholders, as set forth in La. R.S. 22:1973(B)(4)-(6). (Doc. 1-1). Plaintiffs seek penalties under La. R.S. 22:1973, and reasonable attorney's fees. (Doc. 1-1).

Plaintiffs seek a mandatory injunction against First American requiring it to issue a title insurance policy covering Lot 60 pursuant to the Commitment. (Doc. 1-1). Alternatively, Plaintiffs seek a reformed or restated Commitment into a standard form First American title insurance policy, or that First American pay them the full

value of their loss suffered with respect to Lot 60. (Doc. 1-1). Plaintiffs also seek damages compensating them for losing ownership of an undivided one-half (50%) ownership interest in Lots 60-63; emotional distress from others having an ownership interest or actionable claims to their retirement home; reasonable attorney's fees and costs for this action and any curative actions; and reasonable attorney's fees for any action against Plaintiffs seeking partition of Lots 60-63. (Doc. 1-1). Plaintiffs also seek a declaratory judgment striking Section 7 from the Policy. (Doc. 1-1).

On June 7, 2018, First American was served with the Petition and Citation through the Louisiana Secretary of State. (Doc. 1-2). On June 26, 2018, Plaintiffs moved for entry of default judgment against First American. (Doc. 1-3). On July 3, 2018, the Sixth Judicial District Court entered a judgment of default against First American. (Doc. 1-3).

On July 6, 2018, prior to confirmation of default in state court, First American answered and asserted various affirmative defenses. (Doc. 1-4). On that same date, First American removed the action based on diversity jurisdiction and removal jurisdiction. (Doc. 1). First American asserts the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Specifically, First American asserts Plaintiffs claim damages based on its title insurance policy, which has a limit of $180,000. (Doc. 1). First American asserts Plaintiffs claim at least half of that amount, as they allege they do not have title to fifty percent of the undivided ownership of the property covered by the policy. (Doc. 1). First American asserts Plaintiffs also claim penalties and attorney's fees under La. R.S. 22:1892 and 22:1973.

5

(Doc. 1). First American states Exhibit G to Plaintiffs' Petition asserts damages in the amount of $845,241.56 in lost property interests, emotional distress, and attorney's fees; $796,356.92 in improvements to the property; and/or potential liability to others in the amount of $976,730.14. (Doc. 1).

First American further asserts the parties are completely diverse in citizenship. (Doc. 1). First American alleges Plaintiffs are domiciliaries of Louisiana. (Doc. 1). First American further alleges it is a company incorporated under the laws of Nebraska, with its principal place of business in California. (Doc. 1).

Plaintiffs responded to removal with a "Motion to Amend/Correct Complaint" under Fed. R. Civ. P. 15(a)(2) (Doc. 13), and a Motion to Remand (Doc. 14), both filed August 4, 2018. Plaintiffs assert their First Amended Complaint adds new facts and allegations, but no additional parties. (Doc. 13). Plaintiffs assert their First Amended Complaint has no effect on jurisdiction. (Doc. 13). The Court granted leave on August 6, 2018, and Plaintiffs filed their First Amended Complaint. (Doc. 17). First American answered. (Doc. 22).

Plaintiffs now seek to remand this action to state court for the following reasons: (1) because there is a lack of bias against First American in the Sixth Judicial District Court; (2) because the Court should abstain under <u>Younger v. Harris</u>, 401 U.S. 37 (1971); (3) because the $75,000.00 amount in controversy has not been satisfied; (4) because a Second Amended Complaint, if permitted, destroys diversity

jurisdiction;[4] (5) for the convenience of the parties; and (6) because First American is a Louisiana citizen. (Doc. 14).

First American opposes remand. (Doc. 23). First American asserts removal was proper based on diversity jurisdiction. (Doc. 23). First American further asserts Plaintiffs provided no authority that lack of bias in state court is adequate grounds for remand, or that abstention should apply when a petition raises issues of state law. (Doc. 23). First American argues events after removal have no effect on the amount in controversy. (Doc. 23). First American further asserts that any attempt, if sought, to add non-diverse defendants to destroy diversity by Plaintiffs should be denied. (Doc. 23). First American further argues that it is diverse from Plaintiffs as the action is not a direct action, and it is not a citizen of Louisiana. (Doc. 23).

## II. Law and Analysis

### A. Standards governing the Motion to Remand.

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. See Scarlott v. Nissan N. Am., Inc., 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. See St. Paul Reinsurance Co. Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citing

---

[4] Plaintiffs suggest that they anticipate filing a Second Amended Complaint to add additional non-diverse defendants. (Doc. 14). However, there has been no such filing and this issue is not currently before the Court. The Court need not address Plaintiffs' assertions at this time.

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Id. Jurisdictional facts are determined at the time of removal, not by subsequent events. See La. v. Am. Nat'l Prop. & Cas. Co., 746 F.3d 633, 635 (5th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

B. The Court has diversity jurisdiction over Plaintiffs' action.

First American removed based on diversity jurisdiction. (Doc. 1). An action filed in state court may be removed if the action is one over which the court has original jurisdiction. 28 U.S.C. § 1441(a). Title 28 U.S.C. § 1332(a) provides that the district courts have original jurisdiction of all civil actions upon a showing of: (1) diversity of citizenship between the parties; and (2) an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008) (citing Harrison v. Prather, 404 F.2d 267, 272 (5th Cir. 1968)) (internal citation and quotation omitted). The party invoking subject matter jurisdiction in federal court has the burden of establishing the court's jurisdiction. St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F. 3d 1250, 1253-54 (5th Cir. 1998). In this case, First American bears that burden.

8

"[W]hen jurisdiction depends on citizenship, citizenship must be *distinctly and affirmatively* alleged." Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am., 841 F.2d 1254, 1259 (5th Cir. 1988) (internal quotation omitted) (See also Mullins v. Testamerica, Inc., 2008 WL 4888576 (5th Cir. 2008)(per curiam). The citizenship of an individual is his or her domicile, meaning the place where an individual resides and intends to remain. See Acridge v. Evangelical Lutheran Good Samaritan Soc., 334 F.3d 444, 448 (5th Cir. 2003). In this case, Plaintiffs reside in Tensas Parish, Louisiana. (Doc. 1-1). There is no dispute that Plaintiffs are citizens of Louisiana. Acridge, 334 F.3d at 448; see also Doc. 14-1.

A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. See Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C., 757 F.3d 481, 483 (5th Cir. 2014). "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 80–81 (2010). "In practice," the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." Id. at 93. This nerve center "is a single place." Id.

Plaintiffs admit in their Complaint that First American's "home office" is in California. (Doc. 1-1). Plaintiffs specifically allege First American is a foreign title

9

insurance company, having its home office in San Diego, California, with its principal place of business in Orleans Parish, Louisiana. (Doc. 1-1). In its Notice of Removal, First American asserts it is a corporation incorporated under the laws of Nebraska, with its principal place of business in California. (Doc. 1).[5] First American is headquartered in Santa Ana, California, with its principal place of business in Santa Ana, California.[6] There is nothing in the record to indicate First American's high level officers direct, control, or coordinate its activities outside of California. Rather, Plaintiffs rely on a direct action proviso under 28 U.S.C. § 1332(c)(1) to assert First American is a Louisiana citizen. (Doc. 14).

In seeking to remand based on lack of complete diversity, Plaintiffs argue their action is a direct action under 28 U.S.C. § 1332(c)(1) against the insurer of a policy . . . of liability insurance. (Doc. 14). On that basis, Plaintiffs assert First American should be deemed a citizen of the state of which its insured is a citizen. (Doc. 14). Plaintiffs argue that First American is a citizen of Louisiana under § 1332(c)(1). (Doc. 14). Plaintiffs assert the issue of whether First American, a title insurer, is a liability insurer, is an issue of first impression. (Doc. 14). Plaintiffs argue that the Sixth Circuit in Lee-Lipstreu v. Chubb Group of Ins. Cos., 329 F.3d 898 (6th Cir. 2003), acknowledges that there are "certain situations" in which a first party insured may sue his insurer under § 1332(c)(1) and destroy diversity jurisdiction. (Doc. 14-1).

---

[5] See https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=10194453; see also https://businesssearch.sos.ca.gov/CBS/Detail.

[6] See https://www.firstam.com/contact-us/index.html; see also https://businesssearch.sos.ca.gov/CBS/Detail.

Plaintiffs argue comity requires this Court abstain as the determination at issue is better addressed by the Louisiana Insurance Commission or a Louisiana state court. (Doc. 14-1).

In its opposition, First American argues Plaintiffs' assertion that First American is a citizen of Louisiana is contrary to law. (Doc. 23). First American argues 28 U.S.C. § 1332(c)(1) is inapplicable to Plaintiffs' first party insurance action against their own insurer. (Doc. 23). First American asserts § 1332(c)(1) only applies to direct action suits by an injured plaintiff directly against a third-party's insurer. (Doc. 23). Citing the an Eastern District of Louisiana case, <u>Medical Research Centers, Inc. v. St. Paul Property and Liability Ins.</u>, 303 F.Supp.2d 811, 814 (E.D. La. 2004), First American argues that the application of § 1332(c)(1) "is restricted to a 'direct action,' an action against an insurer that faces liability only because of its relationship with the absent (but otherwise liable) insured party." (Doc. 23).

In <u>Medical Research Centers</u>, the Eastern District of Louisiana denied a plaintiff's motion to remand, finding that § 1332(c)(1) is not applicable as the insured plaintiffs made a claim on their own insurance policy for property that had been damaged by toxic mold. <u>See</u> 303 F.Supp.2d at 814. The court noted:

> "[S]imply because the insurer is a direct party does not make the litigation a 'direct action.'" *Rosa v. Allstate Ins. Co.,* 981 F.2d 669, 674 (2d Cir.1992). "Applying the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity—federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state." *Lee–Lipstreu v. Chubb Group of Ins. Cos.,* 329 F.3d 898, 899–900 (6th Cir.2003). Neither the language of section 1332(c)(1) nor its well documented legislative

11

>history suggest that Congress meant to strip federal diversity jurisdiction in the insurance arena.

Id., 303 F.Supp.2d at 814, n.2.

Here, it is clear Plaintiffs are suing their own insurance company, a first party action, for coverage under the terms of their title insurance policy. Thus, § 1332(c)(1) does not apply and First American does not assume the citizenship of Plaintiffs. Accordingly, the Court finds First American is citizen of Nebraska and California, and there is complete diversity among the parties.

Moreover, Plaintiffs attached to their Complaint a first amended proof of claim (Doc. 1-1) itemizing damages totaling $845,241.56, costs of improvements totaling $796,357.92, and potential losses of $976,730.14. (Doc. 1-1). Defendants rely on Plaintiffs' attachments to their Complaint in asserting the amount in controversy met the jurisdictional threshold at the time of removal. (Doc. 1). Plaintiffs seek remand on the basis that their attachments to the Complaint were included to show compliances with provisions of the policy, not to enumerate monetary amounts. (Doc. 14). Plaintiffs also assert they have filed a "Curative Document" in which many of the amounts set forth in their proof of claim are no longer applicable. (Doc. 14). Plaintiffs allege they now seek emotional damage, attorney's fees for this action, attorney's fees for preparation and recordation of the Curative Document, and attorney's fees for a second state proceeding for the unopened Succession of Mr. Harper. (Doc. 14).[7]

---

[7] Plaintiffs attached to their Motion to Remand, a petition for a separate state suit in the Sixth Judicial District Court. (Doc. 14). Plaintiffs name as Defendants Madaline Cross Gibbs, XYZ Insurance Company, Venassa Howell, First American, ABC Insurance Company, The Unopened Succession of Mr. Harper, and NMO Insurance Company. (Doc. 14). Although

12

Defendants argue Plaintiffs' Curative Document is a copy of the affidavit of death and heirship attached to Plaintiffs' First Amended Complaint. (Docs. 17-1, 23). Defendants state the affidavit was executed on July 13, 2018, and recorded in the Tensas Parish public records on July 27, 2018, after removal of this action. (Docs. 17-1, 23). Defendants assert the jurisdictional facts must be judged at the time the complaint is filed. (Doc. 23).

Louisiana law forbids plaintiffs from specifying the monetary value of damages. See La. Code Civ. P. art. 893. Accordingly, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000). "A removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." Robertson v. Exxon Mobil Corp., 814 F.3d 236, 240 (5th Cir. 2015). The Fifth Circuit has stated,

> Once the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction. *St Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also Allen,* 63 F.3d at 1336 (holding that once removal jurisdiction attached, a subsequent amendment of the complaint reducing the amount in controversy to less than the required amount cannot divest jurisdiction); 16 James Wm. Moore et al., Moore's Federal Practice § 107.41[2][c] (3d ed.1999); 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 725 at 115 (3d ed.1998). The jurisdictional facts that support removal must be judged at the time of the removal. *Id.* at 1335. While post-removal affidavits

---

Plaintiffs assert the second state court action has been filed, there is no case number or filing date reflected on the alleged filed document. However, First American states Plaintiffs, rather than attempting to join any additional defendants at an earlier stage, filed a separate state court suit on August 3, 2018. (Doc. 23).

13

may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal. *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.,* 988 F.2d 559, 565 (5th Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994), *abrogated on other grounds, Marathon Oil Co. v. A.G. Ruhrgas,* 145 F.3d 211 (5th Cir.1998). Additionally, if it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction. *St. Paul Mercury Indem.,* 303 U.S. at 292, 58 S.Ct. 586; *ANPAC,* 988 F.2d at 565; *Allen,* 63 F.3d at 1336; *see also De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1407 (5th Cir.1995).

Gebbia, 233 F.3d at 883.

Filed with Plaintiffs' Complaint were proofs of claim with itemized damages well exceeding the jurisdictional threshold of $75,000. (Doc. 1-1). "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, the jurisdictional threshold is facially apparent from the Plaintiffs' pleadings at the time of removal. (Doc. 1-1). Plaintiffs' post-removal affidavit does not deprive the Court of jurisdiction. Gebbia, 233 F.3d at 883. Accordingly, the Court has diversity jurisdiction, and the Motion to Remand should be denied.

### C. The Younger Abstention doctrine is not applicable to this action.

Plaintiffs assert the Court should apply "the abstention doctrines" by deferring to the state court. (Doc. 14-1). Plaintiffs assert the Court should abstain because this action raises multiple issues of first impression of Louisiana law. (Doc. 14-1). Specifically, Plaintiffs assert the Court should abstain under Younger v. Harris, 401 U.S. 37 (1971). (Doc. 14-1). Defendants argue abstention does not apply. (Doc. 23).

14

Defendants argue the Court may address novel issues of state law under the doctrine of Erie R.R. v. Tompkins, 304 U.S. 64 (1938). (Doc. 23).

Under the Younger abstention doctrine, federal courts should avoid interfering in ongoing state court proceedings, absent extraordinary circumstances, as a matter of comity and federalism. Younger, 401 U.S. at 37. The Younger abstention doctrine is applicable to requests for declaratory or injunctive relief based upon constitutional challenges to ongoing state court proceedings. Price v. Porter, 351 Fed.App'x 925, 927 (5th Cir. 2009) (unpublished).

"Under the Younger abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." Gates v. Strain, 885 F.3d 874, 880 (5th Cir. 2018) (internal quotation marks and quoted sources omitted). Once this test is satisfied, then the federal court is obliged to abstain, unless: "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived." Texas Ass'n of Bus. v. Earle, 388 F.3d 515, 519 (5th Cir. 2004) (citation omitted).

The proceeding in state court (i.e. this action), however, was properly removed to federal court. Upon the filing of the notice of removal, the state court was divested of any jurisdiction over this action. See 28 U.S.C. § 1446(d). Thus, the Younger abstention is not applicable in this instance.

### III. Conclusion

Because the parties are completely diverse in citizenship, the jurisdictional threshold has been met, and abstention is unwarranted,

IT IS RECOMMENDED that Plaintiffs' Motion to Remand (Doc. 14) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __5th__ day of February, 2019.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge